(67 Misc. Rep. 650.)

### MONTAGUE v. WANAMAKER.

(Supreme Court, Special Term, New York County.   May, 1910.)

1. SALES (§ 479*)—CONDITIONAL SALES—WAIVER OF CONDITIONS AS TO RESALE.

Where a hotel company purchases furniture under a conditional sale contract, it may waive the provisions of Laws 1897, c. 418, § 116, providing that the vendor of a conditional sale must, if the property is retaken, retain it for 30 days, during which time the vendee may redeem, after which, on failure to redeem, the vendor may sell the same at auction, and such waiver is a waiver of the amendment of such section in Laws 1900, c. 762, permitting the vendee to recover of the vendor, on his failure to sell the property, the amount paid under the conditional sale contract without particular mention thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1435; Dec. Dig. § 479.*]

2. SALES (§ 479*)—CONDITIONAL SALES—WAIVER OF CONDITIONS AS TO RESALE.

Where a receiver of a hotel company, purchasing furniture for its hotel, dealt with the seller so as to lead him to believe that he did not require the goods to be sold within 30 days after the period of redemption as required by law, and negotiated with the seller, who delayed to enable the receiver to find another purchaser, the receiver may not thereafter recover of the seller the amount paid on the goods by the company for failure to sell them within the prescribed period, as allowed by the amendment in Laws 1900, c. 762, of Laws 1897, c. 418, § 116.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1435; Dec. Dig. § 479.*]

Action by Gilbert H. Montague, receiver, against John Wanamaker. Defendant's motion for directed verdict granted.

Paris S. Russell, for plaintiff.
Roberts & Keogh, for defendant.

ERLANGER, J.   On October 6, 1906, the Pierrepont Hotel Company, a domestic corporation, desiring to obtain certain household goods to equip its hotel, entered into an agreement with the defendant wherein and whereby it was covenanted that, if the defendant would deliver such goods to said hotel company, the latter would pay for the same in installments as therein stated; and it was agreed that, if the hotel company defaulted in any of the payments, the defendant could retake the goods without resort to legal proceedings.   In the event of such retaking, all rights under section 116 of chapter 418 of the Laws of 1897, commonly known as the "Lien Law," were expressly waived, and the privilege was conferred upon the defendant of selling the goods at either private or public sale, upon such terms and conditions as to it seemed fit, without notice of any kind.   On December 20, 1906, a supplemental agreement was made between said parties, wherein

it was acknowledged that $1,526.61 had been paid on account of the chattels purchased, and that the balance of $3,883.06 should be paid in notes to mature at fixed periods; and, except the condition as to the times of payment, which was altered, none of the conditions of the original agreement of October 6th was to be changed or in any way affected. Both of these documents were recorded as required by law. The two last notes under the supplemental agreement were not paid; one for $500, matured on June 5, 1907, and the other for $833.06, became due on July 5, 1907. Interest was to be paid at the rate of 6 per cent. on each note from the date of the agreement. It was admitted on the trial that both notes were presented at maturity for payment, and were not paid. On July 1, 1907, in a proceeding entitled "In the Matter of the Voluntary Dissolution of the Pierrepont Hotel Company, a Corporation," the plaintiff was appointed temporary receiver of the assets of said company. The defendant demanded from both the hotel company, and its receiver the return of the articles sold, which demand was refused; and, in order to recover possession, it did on August 9, 1907, on leave granted by this court institute an action in replevin, and all papers in said action were served upon the receiver, who was made a party thereto. Annexed to the papers were copies of the agreements above referred to. The sheriff on said August 9th replevied the chattels and held them for the statutory period; and, the receiver failing to rebond, they were delivered to the defendant in this action and stored. On August 10, 1907, the day following the commencement of the replevin suit, the receiver sent a letter to the defendant Wanamaker in which he wrote:

"I desire to tender to you the balance owing upon the furniture recently recovered from the Hotel under a replevin process. * * * I am unaware of the amount claimed to be owing upon said goods. Kindly inform me as soon as possible the amount now owing and unpaid, in order that I may make tender of the payment thereof."

Both prior to and at the time of the sending of this letter the receiver did not have on hand $1,383.06, the amount due on the goods; but subsequently to September 16, 1907, he had in his possession a sum exceeding $2,000. The plaintiff testified that from the beginning of the replevin action he was in frequent consultation with the defendant Wanamaker and his attorneys, with a view to either selling the goods which had been retaken, so that out of the proceeds there might be enough to pay the balance, or to holding them until he might get enough funds in hand to pay the balance which was then owing; that he had negotiations with the defendant looking to a redemption, or a payment of the unpaid balance, and thereby getting back the goods; and that these negotiations continued until September, 1907, when the defendant Wanamaker and his counsel suggested the possibility of the sale of the goods, so that out of the proceeds the amount owing thereon could be paid and the balance, if any, paid over to the receiver; that this seemed to be satisfactory to him, plaintiff, provided an upset price was fixed which would leave something for him. In December, 1907, a stipulation for a sale for the sum of $2,000 was entered into, but it was not approved by the court until January 28, 1908. It seems that, while these negotiations were being conducted, a purchaser was in fact

found by the defendant who was willing to pay $2,000 for the chattels; but, on account of the delay, he withdrew his offer and refused to complete his purchase. On February 15, 1908, the receiver was informed that all negotiations were off and that the goods would be sold at public auction, but the time and the place of the sale were not mentioned. Thereafter notice of the sale was published in three newspapers in Manhattan, and the sale took place on February 26, 1908. Not an article so sold was bid in by the defendant, and the amount realized after deducting expenses was less than the balance owing to it. The sale not having been made within the 60 days, as required by the lien law, and no notice, except as stated, having been given to the receiver, this action was brought by him to recover the amount which had been paid by the hotel company on account of the goods sold to it. Upon the trial, the foregoing facts, in addition to others not deemed necessary to detail, were established; and each party, at the close thereof, moved for a direction of a verdict in his favor.

By section 116 of chapter 418 of the Laws of 1897, the vendor of a conditional sale is required, if the property is retaken, to retain it for a period of 30 days, during which time the vendee is given the right to redeem. After that period, if the vendee has not redeemed by complying with the terms of the contract, the vendor is permitted to sell at public auction. In 1900 that section was amended (Laws 1900, c. 762) by adding the following at the end thereof:

"Unless such articles are so sold within thirty days after the expiration of such period, the vendee, or his successor in interest, may recover of the vendor the amount paid on such articles by such vendee, or his successor in interest, under the contract for the conditional sale thereof."

By section 117 of the act, 15 days' notice of the sale is required to be given, and the kind of notice so to be given is fully set forth. In the contract of October 6th, the purchaser waived all rights reserved to it under section 116 of chapter 418 of the Laws of 1897, including notice of sale if the chattels were retaken. It is the contention of the plaintiff that the benefits of the amendment were not thereby waived, because no reference was made to it in the contract, and that the waiver, which was limited to the act as it existed in 1897, was abortive, as being against the policy of the law. It is a well-settled rule of statutory construction, when new matter is tacked to an existing law and is preceded by the words "An act in relation, etc., is hereby amended to read as follows," that such amendment is equivalent to an independent statute, and is distinct and separate from the original law. Benton v. Wickwire, 54 N. Y. 229; Homnyack v. Prudential Ins. Co., 194 N. Y. 456–460, 87 N. E. 769. And so the rule is likewise settled that a subsequent amendment cannot by implication be regarded as part of the original act.

But, conceding all this, the fact remains that the law as amended was in full force when the contract was executed. The hotel company waived the provisions of the lien law above referred to, not as it existed in 1897, but as it stood when the contract was made. It was clearly contemplated by the parties that the broad terms of the waiver should operate on the law as it existed at that time. It was not intended as a partial waiver, but as a whole. Such a construction does

not offend the rule above referred to, but is rather in consonance with reason and justice. If the contract had been made before the amendment became effective, of course, the amendment could not be taken into consideration. But if it is assumed that plaintiff's position is correct, and that the amendment was not waived because the words "And the acts amendatory thereof" were not used in the clause waiving the provisions of the lien law of 1897, even then plaintiff would not be aided for the reason that, as against the defendant, no right ever arose under the amendment in favor of the hotel company. That company, as shown, not only waived its privilege to have the property held for 30 days, but also its right to redeem within that period. The amendment provides that, "unless the articles are so sold within thirty days after the expiration of such period," the penalty shall attach. How can plaintiff recover the amount paid on the purchase upon the theory that defendant failed to sell within the statutory time, when the hotel company waived all rights, not only to redeem but to have the articles held for that prescribed term? Clearly there was nothing left upon which the amendment could operate. In other words, as no duty remained to be performed under the original act as it existed in 1897, there could be no violation of the terms of the amendment.

But it is urged that it is against public policy to permit a waiver by the contracting parties. The answer to this must be found in the intention of the lawmakers and a consideration of the abuses which brought the law into existence. The statute is remedial in character, and was designed, as the courts have many times declared, to protect the householder from a certain class of dealers who, before the act was passed, sold household articles on terms that looked inviting to purchasers and who, in case of default in an installment of payment, repossessed themselves of the chattels, securing thereby not only the goods but as well the money paid on account. The enactment checked the practice in that regard and conferred upon the purchaser not only the power to regain the goods, but to sue for the amount paid thereon, in the event of a failure to comply with the terms imposed by the act. As between vendor and vendee, if the articles sold are strictly of a household character, the vendee will not be permitted to waive the statute in his favor. Roach v. Curtis, 115 App. Div. 765, 101 N. Y. Supp. 333, affirmed 191 N. Y. 387, 84 N. E. 283. I do not, however, think that the Legislature ever intended that the act should apply to the case of a purchaser who proposed using the articles in a business for profit. Such a purchaser could waive existing rights. The case at bar illustrates the situation to a degree. The hotel company purchased a large amount of household goods to equip its hotel. Without them it could not conduct its business. Upon its promise to pay in installments, it obtained property exceeding $5,000 in value which it placed in its hotel and then refused to pay for it in full. If such a concern could not waive provisions enacted for its benefit, it is self-evident that it could not only use the law as a shield but as a sword as well. A case in point is Adler v. Weis & Fisher Co., 66 Misc. Rep. 20, 119 N. Y. Supp. 634. See, also, Fairbanks v. Nichols, 135 App. Div. 298, 119 N. Y. Supp. 752.

In addition to the express waiver found in the contract, I am of the opinion that the plaintiff by his acts waived the statute, and that his con-

duct estops him from claiming otherwise. The time to sell on plaintiff's theory of the case expired on October 11, 1907; and the sale was not made until February, 1908. Almost from the very moment of the retaking of the goods under the writ of replevin, he negotiated with the defendant in respect of the same, and not only recognized its rights as owner, but acquiesced in a contemplated sale thereof, after October, 1907, which, if made, would have netted to him a substantial amount. He could have redeemed the chattels long before the actual sale in February, 1908. It appears that, after September 16, 1907, he was possessed of sufficient funds; but he preferred to have the chattels sold by the defendant, and secure the benefit of any surplus. The receiver acted as he did for the benefit of the estate, and no criticism of his conduct is possible in the circumstances. To allow him to recover, however, upon the established facts, would be unjust. He led the defendant to believe that a public sale within the 30 days' limit was not urged by him; but, on the contrary, his negotiations before and after the expiration of that period justified the defendant in resting in the belief that its conduct in delaying such sale was not disapproved. His acts in dealing with the defendant are not unlike those which have been held to operate as a waiver in insurance cases. Norwood v. Preferred Accident Ins. Co. of N. Y., 56 Misc. Rep. 529, 107 N. Y. Supp. 104, and cases cited. Other examples of waiver might be cited, but it is not deemed necessary.

No direct personal notice of the sale was required to be given, as that was expressly waived by the contract.

The plaintiff's motion for the direction of a verdict in his favor is denied, and defendant's motion is granted.

Ordered accordingly.